Shannon Liss-Riordan (SBN 310719)
Harold Lichten (*pro hac vice* forthcoming)
Jeremy Abay (*pro hac vice* forthcoming)
Matthew Carrieri (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801

*Attorneys for Plaintiffs Harjeet Singh and Jasbir Singh, on behalf of themselves and all others similarly situated*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HARJEET SINGH and JASBIR SINGH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BLACKLANE NORTH AMERICA INC.,<br><br>Defendant. | Case No. 3:24-cv-7129<br><br>**CLASS ACTION COMPLAINT WITH JURY DEMAND**<br><br>1. Failure to reimburse business expenses (Cal. Lab. Code § 2802)<br>2. Unlawful deductions (Cal. Lab. Code § 221, 224)<br>3. Failure to remit gratuities (Cal. Lab. Code § 351)<br>4. Failure to pay overtime (Cal. Lab. Code §§ 1194, 1198, 510, 554<br>5. Failure to pay minimum wages (Cal. Lab. Code §§ 1197 and 1194)<br>6. Unlawful and/or unfair business practices (Cal. Lab. Code §§ 17200–17208)<br>7. Violations of the Protect App-Based Drivers and Services Act, Cal. Bus. & Prof. Code § 7463, *et seq.* |

Plaintiffs Harjeet Singh and Jasbir Singh, on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendant Blacklane North America Inc. ("Blacklane") for violations of California law.

## INTRODUCTION

1. Plaintiffs and other Class Members are limousine drivers who provide services to Blacklane's customers in California.

2. Blacklane has misclassified Plaintiffs and other Class Members as independent contractors even though they are employees under California law.

3. By misclassifying Plaintiffs and other Class Members as independent contractors, Blacklane has unlawfully avoided paying hourly wages, business expenses, overtime wages, and other benefits in violation of California law.

4. Blacklane has also violated California law by withholding gratuities from Plaintiffs and other Class Members and by imposing monetary penalties on Plaintiffs and Class Members in the form of unlawful deductions from their wages.

## PARTIES

5. Plaintiff Harjeet Singh is an individual residing in San Lorenzo, California.

6. Plaintiff Harjeet Singh has worked as a limousine driver for Blacklane in California since 2019.

7. Plaintiff Jasbir Singh is an individual residing in Hayward, California.

8. Plaintiff Jasbir Singh has worked as a limousine driver for Blacklane in California since 2023.

9. Defendant Blacklane North America Inc. is a foreign corporation with its principal place of business at 111 Town Square Place, Suite 1203, Jersey City, New Jersey 07310.

10. At all material times, Blacklane actively and continuously conducted and advertised its business in California.

## JURISDICTION AND VENUE

11. Jurisdiction is proper under 28 U.S.C. § 1332(a), as the matter in controversy exceeds $75,000 and is between citizens of different States.

12. Jurisdiction is also proper under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000 and the Class Members reside in a state different from that of Blacklane.

13. Venue in proper under 28 U.S.C. § 1391(b)(2) because many of the events underlying this action occurred in this judicial district.

## FACTS

14. Blacklane is a transportation company that provides limousine services across the United States, including in California.

15. Customers can order limousine services through Blacklane's mobile phone application and website, https://www.blacklane.com.

16. Blacklane advertises its business as a "Chauffeur Service," including on the Apple App Store.

17. According to its website, "Blacklane's limousine service fleet can be tailored to fit a variety of needs: our regular Business Class vehicle can be used for either as a simple A-to-B journey or hired by the hour for maximum flexibility on the part of the passenger." *See* https://www.blacklane.com/en/limousine-service/ (last visited Sept. 3, 2024).

18. On its Instagram page, Blacklane posts the tagline, "You thrive. We'll drive."

19. Drivers who want to work for Blacklane must apply through Blacklane's "Onboarding Portal."

20. All drivers must complete Blacklane's mandatory training program before providing services to customers.

21. Blacklane's training modules cover topics such as "Chauffeur Values – Prioritize Safety" and "Reviewing Rides and Waiting Time Policy."

22. Each Blacklane training module requires the driver to watch a video and take a test about the module's content.

23. The driver must pass the test to access the next training model.

24. Drivers must complete all training modules before Blacklane offers them work assignments.

25. Blacklane's driver training programs continue past the onboarding process.

26. Drivers "[r]eceive regular performance updates and gain access to continually updated training modules." *See* https://partner-help.blacklane.com/en/articles/8420677-what-does-it-mean-to-become-a-blacklane-partner. (last visited Sept. 3, 2024).

27. When driving for Blacklane, Plaintiffs and Class Members must "adhere to" Blacklane's numerous "Operational Guidelines" and "standards" to "ensure loyal customers and sustainable business." *See* https://partner-help.blacklane.com/en/articles/8416146-operational-guidelines (last visited Sept. 3, 2024).

28. Plaintiffs and the Class Members must also comply with Blacklane's "Quality Standard."

29. For example, Blacklane's Quality Standard bars drivers from taking cash, asking for tips, and soliciting Blacklane customers for further business.

30. Blacklane's Quality Standard also requires drivers to wear a "dark suit, button-up shirt, tie, and polished shoes," perform all accepted rides, and "[i]nspect the vehicle after drop-off to remove any trash, clean spots, etc."

31. Blacklane also "expect[s]" its drivers to perform a 10-point vehicle inspection "before each ride." *See* https://partner-help.blacklane.com/en/articles/9515406-10-point-vehicle-checklist (last visited Sept. 3, 2024).

32. Blacklane uses its unilateral control to set other policies detrimental to Plaintiffs and the Class Members.

33. For example, Blacklane offers customers "complimentary wait time"—that is, unpaid time for the driver—of up to "one hour for airport and long-distance train station pickups, and 15 minutes for all other pickups." *See* https://help.blacklane.com/en/articles/2693285-am-i-charged-for-additional-wait-time-if-my-chauffeur-arrives-early (last visited Sept. 3, 2024).

34. Blacklane also allows customers to modify their booking at any time, including during the trip. *See* https://help.blacklane.com/en/articles/2693231-what-do-i-do-if-i-booked-a-ride-with-the-wrong-pickup-or-dropoff-location (last visited Sept. 3, 2024) ("If you have already passed the 60 minutes threshold or you are already in the vehicle, please inform the chauffeur about the route change.").

35. Blacklane has also unilaterally established a customer cancellation policy that allows customers "to cancel their ride free of charge up until 1 hour before the scheduled pickup time." *See* https://help.blacklane.com/en/articles/3810157-what-is-the-cancellation-policy-and-how-can-i-cancel-my-ride (last visited Sept. 3, 2024).

36. Although these modifications may result in more work for the driver, Blacklane—and not the driver—decides whether to charge the customer for the additional services.

37. Drivers who refuse to perform services pursuant to the customer's modifications violate Blacklane's rules and are subject to monetary penalties.

38. To ensure that drivers comply with its "Operational Guidelines," "Quality Standard," "Vehicle Checklist," and other policies, Blacklane imposes monetary penalties on drivers for a variety of "incidents"—that is, noncompliance with its policies, rules, and standards. *See* https://partner-help.blacklane.com/en/articles/8416231-incident-types-and-agreed-costs-service-failures (credentials required) (last visited Sept. 3, 2024).

39. Under its current "incident" policy, Blacklane imposes a monetary penalty equal to 100% of the associated fare if the driver requests a cash payment, subcontracts the trip to another driver or vehicle, solicits the guest for further business, discloses private information, engages in "harmful behavior," drives dangerously, or fails to pick up the customer.

40. Requesting a cash payment, subcontracting to another driver, soliciting a customer, and disclosing private information are listed as cause for termination.

41. Incidents that result in a monetary penalty equal to 50% of the associated fare include poor driving, mechanical issues, arriving more than five minutes late to the pickup, missing a baby seat, and failing to confirm a ride 45 minutes ahead of the pickup.

42. Arriving less than five minutes late, asking for a tip, having bad manners, initiating a conversation, not following special requests, and using a damaged, dirty, or smelly vehicle result in a monetary penalty equal to 25% of the associated fare.

43. Blacklane also charges drivers a "handling fee" on "all incidents to account for Blacklane's amount of effort and time required to resolve the issue resulting from the incident." *Id.*

44. Blacklane also imposes monetary penalties on drivers who fail to cancel a scheduled ride without adequate notice.

45. Blacklane refers to driver cancellations as "givebacks."

46. Under its current "giveback" policy, "the following penalties are applied based on when the ride is returned":

| Time of give-back (before original pickup time) | Penalty (% of original ride price) |
| --- | --- |
| 24 hours or more | 0% |
| 6–24 hours | 20% |
| 2–6 hours | 40% |
| 45 minutes to 2 hours | 60% |

47. For example, "[i]f the ride pickup time is 9 a.m. on Sunday and the ride was given back at 6 a.m. on Sunday, a 40% penalty would apply." *See* https://partner-help.blacklane.com/en/articles/8592893-what-is-the-give-back-policy (Sept. 3, 2024).

48. Penalties appear in the driver's next monthly pay statement.

49. Besides monetary penalties, Blacklane uses its work assignment process to ensure that Plaintiffs and Class Members comply with Blacklane policies and provide high-quality services.

50. Blacklane posts available work assignments to two virtual job boards.

51. One job board lists fixed-pay assignments, while the other functions as a reverse auction.

52. Which job board a driver can access depends on the driver's rating.

53. Customers are prompted to rate their driver using a five-star scale after each ride.

7
**CLASS ACTION COMPLAINT**

54. Drivers rated at least 4.9 stars over the last 90 days can access the fixed-pay job board.

55. The first driver who accepts the fixed pay assignment on the job board receives the work.

56. For this reason, Plaintiffs and other Class Members must constantly monitor the fixed-pay job board to gain access to economically feasible fares.

57. Drivers with a rating below 4.9 stars must "bid" on work assignments in a reverse auction, with the assignment going to the driver who accepts the lowest pay.

58. Because the reverse auction process drives down the pay amount, drivers strive to maintain a rating of at least 4.9 stars so that they receive fixed-pay work assignments.

59. The number of "offerings" that each driver receives from Blacklane also depends on the driver's total number of "give backs"—that is, cancellations—and "incidents"—that is, violations of Blacklane's operating guidelines.

60. By its own admission, Blacklane designed its work assignment system "to incentivize better planning and scheduling for our chauffeurs, ultimately leading to improved service delivery and higher guest satisfaction."

61. In other words, Blacklane uses its work assignment system to control the quality of services that Plaintiffs and other Class Members provide.

62. Blacklane also sets all prices and controls the entire payment process.

63. For example, despite telling customers that tips, gratuities, or tolls are included, Blacklane does not remit any tips, gratuities, or toll reimbursements to the driver.

64. Blacklane also requires Plaintiffs and the Class Members to bear business expenses necessary to perform their work for Blacklane.

65. For example, while working for Blacklane, Plaintiffs and other Class Members must pay for their vehicle, gas, maintenance, smartphone, data plan, insurance, supplies, and other expenses.

66. Blacklane does not reimburse Plaintiffs and other Class Members for the business expenses they incur while working for Blacklane.

## CLASS ALLEGATIONS

67. Plaintiffs bring this action individually and on behalf of the following class:

> All individuals who have performed transportation services on behalf of Blacklane in the State of California within the last four years.

68. Plaintiffs and the Class Members have uniformly been misclassified as independent contractors and thereby suffered violations of the Labor Code. Blacklane has uniformly not complied with the Protect App-Based Drivers and Services Act, Cal. Bus. & Prof. Code § 7463, *et seq.* ("Prop 22") with respect to its drivers in California and thus is not entitled to the defense since that statute went into effect that the drivers are independent contractors. In the alternative, Plaintiffs and Class Members are entitled to the protections of that statute.

69. The Class is so numerous that the drivers' individual joinder into a single action is impracticable.

70. Although the exact number of Class Members cannot be properly determined without further discovery, the number and identity of the Class Members can easily be ascertained from Blacklane's records.

71. Based on the allegations above, there are questions of law and fact that affect and are common to all Class Members. The central questions of law and fact involved in this action are of a common or general interest.

72. Common legal and factual issues predominate over any questions affecting only individual Class Members.

73. Plaintiffs' claims are typical of the claims of other Class Members.

74. Plaintiffs performed the same work and seek the same categories of damages as all Class Members.

75. Plaintiffs are committed to vigorously prosecuting this action because Blacklane has caused him to suffer actual losses.

76. Plaintiffs have retained qualified counsel experienced in class action practice.

77. A class action is the superior method available for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class Members may be relatively small, in comparison with the expense and burden of individual litigation, it is impracticable for members of the Class to seek redress individually for the wrongful conduct herein alleged.

78. Were each member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the court.

79. The prosecution of separate actions would also create the risk of inconsistent rulings, which may be dispositive of the interest of Class Members who are not parties to the adjudication and may substantially impede Class Members' ability to protect their interests and, therefore, would be contrary to the interest of justice and equity.

## COUNT I
### (Business Expenses)

80. Plaintiffs reallege by reference all allegations in all preceding paragraphs.

81. Blacklane has violated Cal. Lab. Code § 2802 by causing Plaintiffs and similarly situated drivers to bear business expenses necessary to perform their work, including, but not limited to, gas and car maintenance, insurance, and supplies such as smartphones and data plans.

## COUNT II
### (Unlawful Deductions)

82. Plaintiffs reallege by reference all allegations in all preceding paragraphs.

83. Blacklane has violated Cal. Lab. Code §§ 221 and 224 by imposing unlawful deductions and improper setoffs against wages earned by Plaintiffs and similarly situated drivers.

## COUNT III
### (Gratuities)

84. Plaintiffs reallege by reference all allegations in all preceding paragraphs.

85. Blacklane tells customers that the fares they pay include gratuities. However, Blacklane has not paid drivers any gratuities.

86. Blacklane has thus violated Cal. Lab. Code § 351 by collecting gratuities that are not remitted to the drivers.

## COUNT IV
### (Overtime)

87. Plaintiffs reallege by reference all allegations in all preceding paragraphs.

88. Blacklane has violated the Cal. Lab. Code §§ 1194, 1198, 510, and 554 by failing to ensure that its drivers were paid an overtime premium for hours worked over 40 per week.

89. For example, Plaintiff Harjeet Singh worked more than 40 hours for Blacklane during the week of August 26, 2024, but he did not receive any overtime premium (time-and-a-half his regular rate) for this week.

90. Similarly, Plaintiff Jasbir Singh worked more than 40 hours for Blacklane during the week of September 30, 2024, but he did not receive any overtime premium (time-and-a-half his regular rate) for this week.

## COUNT V
### (Minimum Wages)

91. Plaintiffs reallege by reference all allegations in all preceding paragraphs.

92. Blacklane has violated Cal. Lab. Code §§ 1197 and 1194 by failing to ensure that its drivers are paid at least the full state minimum wage.

93. For example, during the week of July 8, 2024, Plaintiff Harjeet Singh earned less than the minimum wage for his work for Blacklane after deducting his business expenses.

## COUNT VI
### (Unlawful Business Practices)

94. Plaintiffs reallege by reference all allegations in all preceding paragraphs.

95. Blacklane's conduct constitutes unlawful business acts or practices because it has violated Cal. Lab. Code §§ 221, 224, 226, 351, 510, 554, 1194, 1197, 1198, and 2802, as described above.

96. Blacklane has thus violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

97. Blacklane's unlawful conduct has caused Plaintiffs and similarly situated drivers to suffer injuries in fact and to lose money and property, including, but not limited to, unreimbursed business expenses, unlawful deductions and setoffs, unpaid gratuities, unpaid overtime wages, and unpaid minimum wages.

98. Pursuant to California Business and Professions Code § 17203, Plaintiffs seek, for themselves and similarly situated drivers, declaratory and injunctive relief for Blacklane's unlawful conduct and to recover restitution.

99. Pursuant to California Code of Civil Procedure § 1021.5, Plaintiffs and similarly situated drivers are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

## COUNT VII
**(Protect App-Based Drivers and Services Act ("Prop 22"))**

100. Plaintiffs reallege by reference all allegations in all preceding paragraphs.

101. Should Blacklane contend that Plaintiffs and other similarly situated drivers are independent contractors under the Protect App-Based Drivers and Services Act, Cal. Bus. & Prof. Code § 7463 ("Prop 22"), then Blacklane had a statutory duty to provide certain benefits to Plaintiffs and other drivers.

102. For example, the Act requires Blacklane to, among other things: (1) provide "an appeals process for deactivated drivers"; (2) ensure that drivers were "compensated at not less than the net earnings floor"; (3) give the full amount of any gratuity to the driver; (4) provide per-mile compensation for vehicle expenses; (5) pay a quarterly health care subsidy to drivers; and (6) provide occupational accident insurance and accidental death insurance to drivers. Cal. Bus. & Prof. Code §§ 7452(c), 7453(a), 7453(c), 7453(d), 7454(a), § 7455(a)-(b).

103. Blacklane failed to provide these benefits under the Act to Plaintiffs and similarly situated drivers. Thus, Blacklane has forfeited any claim or defense that Plaintiffs and similarly situated drivers are independent contractors under the Act, Cal. Bus. & Prof. Code § 7451. Blacklane is thus liable for the Labor Code provisions described above, including for the time since the Act went into effect.

104. However, in the alternative, Plaintiffs and similarly situated drivers are entitled to damages for Blacklane's violations of the Act.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief:

A. An order under Federal Rule of Civil Procedure 23 certifying the class defined above, appointing Plaintiffs as the class representatives, and appointing the undersigned attorneys as class counsel;

B. Damages for all unpaid wages and gratuities owed to Plaintiffs and similarly situated drivers;

C. Damages for all business expenses incurred by Plaintiffs and similarly situated drivers;

D. Damages for all unlawful deductions taken from the wages of Plaintiffs and similarly situated drivers;

E. An award of attorney's fees, costs, and expenses;

F. Prejudgment interest;

G. Judgment declaring that Plaintiffs and similarly situated drivers are Blacklane's employees under California law;

H. Judgment declaring that Blacklane has violated California's Labor Code; and

I. Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all claims.

Dated: October 11, 2024

HARJEET SINGH and JASBIR SINGH,
on behalf of themselves and all others
similarly situated

By their attorneys,

*s/ Shannon Liss-Riordan*
Shannon Liss-Riordan (SBN 310719)
Harold Lichten (*pro hac vice* forthcoming)
Jeremy Abay (*pro hac vice* forthcoming)
Matthew Carrieri (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
sliss@llrlaw.com
hlichten@llrlaw.com
jabay@llrlaw.com
mcarrieri@llrlaw.com